**OLIN CORPORATION, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.**

No. 84 Civ. 1968 (LBS).

United States District Court,
S.D. New York.

July 30, 1991.

Haythe & Curley, New York City (James J. Harrington, John T. Patterson, Michael L. Gioia, of counsel), for Olin Corp.

Hopkins & Sutter, Washington, D.C. (Richard H. Gimer, Kathryn A. Underhill, of counsel), for Falcon Ins. Co. and Commercial Union Ins. Co.

Zelle & Larson, San Francisco, Cal. (Steven D. Meier, San Francisco, Cal., Michelle K. Enright, Paul L. Gingras and Pat St. Peter, Minneapolis, Minn., of counsel), D'Amato & Lynch, New York City (Jerome Murray, of counsel), for Employers Ins. of Wausau.

Seward & Kissel, New York City (Dale C. Christensen, R. Scott Garley and Joseph E. Field, of counsel), for Hanover Ins. Co.

## OPINION

SAND, District Judge.

This case comes before the Court on four motions by the defendant-insurers. The facts underlying these motions are set forth at length in two prior Opinions of this Court, familiarity with which is assumed. *See Olin v. Insurance Co. of N. Am. (INA)*, 762 F.Supp. 548, 550–55 (S.D.N.Y.1991) (hereinafter *"Olin II"*) (Huntsville claims); *Olin v. INA*, 743 F.Supp. 1044, 1046–48 (S.D.N.Y.1990) (hereinafter *"Olin I"*) (Saltville claims), *aff'd*, 929 F.2d 62 (2d Cir.1991).

Defendants Falcon Insurance Company and Commercial Union Insurance Company ("Falcon/Commercial Union") move for partial summary judgment on the ground that the Olin Corporation ("Olin") gave late notice of the Huntsville occurrence[1] and thereby forfeited the coverage of the Falcon/Commercial Union policies. Defendant Employers Insurance of Wausau ("Wausau") moves for partial summary judgment on the ground that Olin provided it with

---

**1.** This Court's April 23, 1991 Opinion did not resolve the question of whether the DDT pollution at Huntsville was an "occurrence" within the meaning of the relevant policies. *See Olin II*, 762 F.Supp. at 564. Our use of the term "occurrence" in this Order is merely for convenience and is not intended to express a view on this open issue.

late notice of the Saltville occurrence. Wausau also moves for the entry of a final judgment under Fed.R.Civ.P. 54(b) with regard to certain portions of this Court's April 23, 1991 Opinion, as does defendant Hanover Insurance Company ("Hanover").

### 1. *Falcon/Commercial Union's Motion for Partial Summary Judgment*

Falcon/Commercial Union moves for summary judgment dismissing Olin's claims for indemnity arising out of the Huntsville occurrence, on the ground that Olin's notice to Falcon/Commercial Union was unreasonably late as a matter of law. The Falcon/Commercial Union policies are excess policies which provided coverage for liabilities in excess of certain amounts. Those amounts varied from year to year, the lowest trigger amount being $300,000 and the highest $30,300,000. *See* Affidavit of Kathryn Underhill (6/4/91) ("Underhill Aff."), ¶ 38.

■ The parties agree that New York law governs the late notice issue with regard to Falcon/Commercial Union. Under New York law, an insured has a duty to give notice to an excess insurer when the circumstances known to the insured "would have suggested a reasonable possibility of a claim that would trigger the excess insurer's coverage." *Olin I*, 743 F.Supp. at 1054. This Court has held previously that Olin's duty to give notice of the Huntsville occurrence to its primary insurer accrued, at the latest, on July 9, 1979, when the first of the underlying DDT lawsuits was filed. *Olin II*, 762 F.Supp. at 566. That class action suit advanced ten theories of liability and sought $50,000,000 in damages on each claim. *See* Underhill Aff. at ¶¶ 24–25.

The damages sought in the first DDT lawsuit were well in excess of even the highest trigger amount of the Falcon/Commercial Union policies. Moreover, Olin had been on notice since at least the mid–1960s that large amounts of DDT-laden effluent were being discharged from the Huntsville plant and that DDT was potentially toxic to wildlife and humans. *See Olin II*, 762 F.Supp. at 552–54. Based upon these circumstances, this Court concludes that the filing of the first lawsuit should have suggested to Olin that there was a reasonable possibility that the Falcon/Commercial Union policies would be triggered. Accordingly, we hold that Olin's duty to give notice to Falcon/Commercial Union accrued, at the latest, on July 9, 1979.

■ Olin did not provide notice to Falcon/Commercial Union until mid-August, 1980. Under New York law, even relatively short periods of delay in notification are unreasonable unless a valid excuse is given. *See, e.g., Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2d Cir.1984) (six months); *Power Auth. of New York v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 343, 502 N.Y.S.2d 420, 423 (1986) (fifty-three days). Olin argues that it failed to give earlier notice because it believed that the underlying DDT claims were meritless, and because it did not believe that its liability would reach the levels necessary to invoke the Falcon/Commercial Union policies. Given the long history of knowing DDT pollution at Huntsville and Olin's awareness of the potentially harmful effects of DDT, this Court finds the proffered excuse to be unpersuasive. Accordingly, we hold that as a matter of law Olin provided unreasonably late notice to Falcon/Commercial Union. As a result, Falcon/Commercial Union is absolved of any duty to indemnify Olin with respect to the Huntsville occurrence.

### 2. *Wausau's Motion for Partial Summary Judgment*

Wausau moves for partial summary judgment, seeking a declaration that it has no duty to defend or indemnify Olin with respect to the Saltville occurrence on the ground of late notice. The Wausau policies at issue covered the period January, 1974 to March, 1977.

This Court previously has held that Olin's duty to notify its primary and excess insurers regarding the Saltville occurrence accrued, at the latest, in early 1982, and that Olin's failure to notify its insurers until April, 1983 was unreasonable as a matter of law. *Olin I*, 743 F.Supp. at 1054. It is undisputed that Olin gave notice to Wausau in April, 1983, at the same time

that it notified its other insurers. Therefore, it is already settled that Olin provided unreasonably late notice to Wausau; the only question is whether Olin's coverage under the Wausau policies is forfeited as a result.

■ Wausau argues that New York law applies, and that because New York law provides that unreasonably late notice absolves an insurer of any duty to defend or indemnify the insured, its motion for partial summary judgment should be granted. Olin contends that Connecticut law applies, and that under Connecticut law the giving of late notice does not absolve an insurer of liability unless the insurer is prejudiced by the delay. *See Aetna Casualty & Sur. Co. v. Murphy*, 206 Conn. 409, 538 A.2d 219 (1988).

Federal courts sitting in diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). New York law requires courts to apply the law of the jurisdiction "which has the most significant contacts with the matter in dispute." *Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99 (1954).

Applying the New York choice of law rule in *Olin I*, this Court determined that all of the insurance policies at issue were governed by New York law. *See Olin I*, 743 F.Supp. at 1048–49. Some of the policies examined in *Olin I* were indistinguishable, from a choice of law perspective, from the Wausau policies at issue here. Accordingly, the reasoning of the prior Opinion requires the application of New York law here.

Olin's principal argument in favor of the application of Connecticut law is that Olin used the services of its insurance broker's Connecticut office from 1973 to 1977 and that this factor tips the choice of law balance in favor of Connecticut law. We disagree. The three Wausau policies at issue on this motion are a small part of Olin's comprehensive multi-year insurance program encompassing numerous primary and excess policies. Olin's fortuitous decision to utilize the services of its broker's Connecticut office for a four-year period, after

which Olin reverted to using the broker's New York office (as it had done prior to 1973), does not alter the choice of law result.

In its complaint, Olin sought coverage for the Saltville occurrence under all policies issued to it from 1950 to 1984. During this entire period the center of gravity of Olin's insurance program was New York. Olin maintained an office in New York throughout the period, and the negotiation of its liability insurance policies consistently involved the New York offices of its broker. As such, we conclude that New York has "the most significant contacts with the matter in dispute" in this motion and in this case. *Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99 (1954). Because New York law applies, Wausau's motion is granted for the reasons set forth in our *Olin I* Opinion.

■ Even if Connecticut law applied to the Wausau motions the result would be no different. Under Connecticut law, the provision of late notice to an insurer raises a presumption of prejudice which must be rebutted by the insured. *See Aetna*, 206 Conn. at 419, 538 A.2d at 224. The Connecticut courts have not yet defined what constitutes prejudice to an insurer under Connecticut law.

In this case, the undisputed facts show that by the time Olin notified Wausau of the Saltville occurrence it had already spent almost $2,000,000 and had entered into a consent decree which required it to spend millions more. *See Olin I*, 743 F.Supp. at 1049–50. In addition, the cleanup efforts made by Olin prior to the time it notified Wausau had, to some extent, changed the physical appearance of the Saltville site. This Court is of the opinion that under these circumstances, the Connecticut Supreme Court would conclude that Wausau had been prejudiced by Olin's delay in providing notice. Accordingly, even if Connecticut law applied to the Wausau policies, we would find as a matter of law that the presumption of prejudice had not been rebutted.

For the reasons set forth above, Wausau's motion for partial summary judgment is granted.

### 3. *The Rule 54(b) Motions*

In *Olin II,* this Court granted motions for partial summary judgment made by Wausau and Hanover with respect to the Huntsville DDT claims. *See* 762 F.Supp. at 561, 566. Those defendants now seek entry of a final order dismissing Olin's complaint against them insofar as it alleges liability arising from the Huntsville occurrence.

Rule 54(b) of the Federal Rules of Civil Procedure provides that a district court may, in its discretion, enter a final judgment in a multi-claim or multi-party case where one claim is resolved as to all parties, or where all claims are resolved as to one party, upon a finding that there is no just reason to delay entry of judgment. In a case such as this, which includes claims relating to various different sites, it is appropriate to consider claims arising from each separate site to be separate "claims" for purposes of Rule 54(b). *See Walker v. Maccabees Mut. Life Ins. Co.,* 753 F.2d 599, 601 (7th Cir.1985).

This Court's *Olin II* Opinion resolved all claims by Olin against Wausau and Hanover arising out of the Huntsville occurrence. Accordingly, the requirements of Rule 54(b) are satisfied and this Court may, in its discretion, enter a final judgment as to those defendants.

Olin argues that it has outstanding claims against the defendants arising from the Huntsville occurrence because defendant Insurance Company of North America's ("INA") contribution based cross-claims were assigned to Olin as part of its settlement with INA. However, these cross-claims are no longer viable as against Wausau and Hanover because those parties have no liability to Olin for the Huntsville occurrence, *see Robinson v. Shapiro,* 646 F.2d 734, 739 (2d Cir.1981), and because INA's settlement with Olin extinguished INA's right to seek contribution from other insurers, *see Merchants Bank of New York v. Credit Suisse Bank,* 585 F.Supp. 304, 309–10 (S.D.N.Y.1984).

This Court concludes that there is no just reason to delay entry of final judgment with respect to Wausau and Hanover. The issues adjudicated in those parties' motions for summary judgment are factually distinct from the other issues remaining in this case; as such, there is no danger of piecemeal appeals. If entry of a final judgment were delayed, it is likely that the litigation costs of Wausau and Hanover would be increased. Finally, in a complex, multi-site litigation such as this one, it is in the interest of all parties to narrow the remaining pool of pending issues. Accordingly, the Rule 54(b) motions are granted.

### *Conclusion*

For the reasons stated above, the motions for summary judgment of Falcon/Commercial Union and Wausau are granted. The Rule 54(b) motions are also granted. Wausau and Hanover are directed to submit proposed Rule 54(b) orders on notice.

SO ORDERED.